Case No. 2515A2 Everyone's testy with their last names here. Mr. Stiglitz? Yes, Your Honor. Did I get that right? You did, Your Honor. Good morning, and may it please the Court. My name is Jack Stiglitz, and I have the privilege of appearing before you today on behalf of the plaintiff, Joshua Cleaveland. Mr. Cleaveland was using a ladder, a stepladder, that had been designed, manufactured, and sold by the defendants. When the ladder collapsed, causing the fall and sustained injury, he brought a proxily of the act under Connecticut law against Home Depot and Tricam Industries. The appeal raises three issues. With the Court's permission, I'd like to focus on the first one as set forth in the plaintiff's brief, and that is, did the district court err in preventing Mr. Cleaveland from supplementing his expert report? And what's our standard of review on that, counsel? There's a question, Your Honor, of whether the district court considered the appropriate factors in making its decision. Right. But how do we review that? De novo, abuse of discretion, clear error? Typically, you'd be looking at an abuse of discretion sort of approach, but when the court is not taking into account the legal factors that it's supposed to take into account, then you're looking at more of a plain error sort of, an error of law. Well, but abuse of discretion encompasses a potential error of law, right? Well. You can abuse your discretion as a trial judge by getting the law completely wrong. That's true. But when you're looking at whether the, how this Court analyzes what the district court did, the district court isn't applying the correct factors, then I think there's an issue of law for the Court to address that. But even if it's an abuse of discretion, you're saying there is a legal error because the district court applied the wrong factors. Yes. And the reason why you think the district court applied the wrong factors is because you think that this was tantamount to a dismissal of the whole action? It did actually result in the ultimate dismissal of the case. But the district court actually, it just doesn't deny your ability to rely on the initial report. It just denies the supplemental report. That's correct, Your Honor. It came late, right? In cases where we say it's tantamount to a dismissal of the whole action, it's usually striking the plaintiff's claims or something that really is automatically dispositive. Well, Your Honor. You're just saying this ended up being tantamount to a dismissal of the action because our initial expert report was not very good, and so we needed the supplemental report to bolster it, right? Your Honor, it's clear here, and it was clear from the beginning and at every stage of the process from the supplemental report not being allowed to the expert to be excluded until summary judgment being granted, that that was going to happen. It was clear from the very beginning when you saw the initial report? It was clear as soon as the court denied the application to submit the supplemental report that the case was going to be decided. But again, isn't that just a failure to – if the expert report is not good enough, how is that – and it was apparently not apparent to counsel because the expert report, I think, was around for two years or so before we got to the stage where it became apparent that counsel was going to seek to supplement. But why should – that's just sort of asking for a second bite at the apple, isn't it? Saying, like, look, we're trying this expert report. Oh, that's not good enough. Let's try again. What I say, Your Honor, is that – and the defendant doesn't even argue that if the supplemental report had been allowed, that the testimony of Mr. Slocum should nevertheless have been excluded or that summary judgment shouldn't have entered. So this was, in fact, outcome determinative in our case. And I would go further to say that – but isn't – I mean, the test for what standard we apply, it can't just be that it's, in fact, outcome determinative because based on the particular facts, we would have had a much stronger case if the supplemental report was allowed. It doesn't have to be that the actual relief that's being awarded as a penalty for a discovery violation is the dismissal of the case. And here there's, like, an extra step. It's, like, you can't file the supplemental report and then I'm going to separately analyze the motion for summary judgment while taking into consideration the initial report and the motion and the opposition to the motion. And, like, that does not follow automatically from the discovery section. Right? It's – in fact, what happened here, because the supplemental report was not allowed, was, in fact, that the expert was entirely precluded. And what I'm saying is that when you have a situation in which the evidence that's being offered – and it is late. It was after the time. I'm not disputing that. But when you have a situation where you have a discovery violation, which is what this is all about, and evidence is offered, and that evidence is going to be determinative of whether the case can go forward and whether plaintiff can get to the jury. May I ask you a question? Yes, Your Honor. So after the denial, you continued – the litigation continued for a number of months. Is that correct? For some not insignificant period of time. Is that correct? The decisions and the motions overlapped each other. So it wasn't a matter of – so the motion for summary judgment and the motion to exclude the expert were filed the same day as the motion to supplement. So it wasn't a matter of one, you know, happening after the other. They all happened at the same time. It happened after, but on the same day. The same day. But a few hours after. So Plaintiff's counsel receives the defendant's motion for summary judgment and motion to preclude and in response, presumably a few hours later, files the motion to supplement. Your Honor, the record reflects that the plaintiff had previously indicated in a status report that supplementation was anticipated. And the record reflects that the plaintiff's attorney received that report that very day and turned around and disclosed it and filed the motion for permission to supplement. So these things are all happening at the same time. What happened after the – your motion to supplement was denied? What happened with the litigation? Just take me through it. After that motion was denied, the Court went on to hear the motion to exclude and the motion for summary judgment and granted those motions. Okay. And at each stage, Your Honor, the plaintiff brought back up these issues of what was in the supplemental report. It was evident. But there was a summary judgment motion with briefing and so on that the district court considered after the denial of the supplemental report. But that happens every time, Your Honor, an expert is excluded. Then there's a motion, a dispositive motion. So that doesn't distinguish this case. What's the difference in the standard of review between what was applied and what should have been applied? And what do you think is the key fact that should have led to a different result? When evidence that's being offered and has been excluded is outcome determinative ultimately critical to whether the case can go forward or not, the typical standards that are applied in that four-part test used by the Court aren't adequate to protect the interests of the parties. And so the Court has, in the worldwide polymer test case, come up with factors that establish that when you have this evidence that's this critical, it takes something extraordinary to keep it out of the case. And you don't have that sort of thing here. You don't have a history of bad actions by the plaintiff. You don't have a malicious or terrible act by the plaintiff or their attorney. You don't have any consideration of lesser sanctions than exclusion. What possible lesser sanction could there have been in this circumstance other than denying the supplemental motion, the supplemental report? The Court couldn't consider the sanctions that are listed in Rule 37, letting the jury know that something had happened in the course of the case. The Court could have considered monetary sanctions. There are a range of sanctions that the Court could consider. That were never considered. The only alternative that was the potential alternative that was considered by the Court was a continuance of the case. And the Court's analysis, the district court's analysis of consideration is very circular. The Court essentially said, I'm not going to continue the case because that would mean the case would be continued. The case had never been continued before. There was no history of – and this is not an old case. There's no history of wrongful actions on the part of plaintiff's – plaintiff or plaintiff's counsel. So under the – one of the factors in the Worldwide Polymer Test is whether there was a warning to the plaintiff that he's in jeopardy of losing his case if this motion is granted and doesn't supplement. None of those factors, as set forth in that case, were addressed by the Court. And the defendant in this case doesn't argue that if those appropriate factors were considered, that the Court's order could be upheld.  We'll hear from your friend on the other side. Thank you, Your Honor. You reserve some time for a follow-up. I'm not even going to try. Thank you, Your Honor. Jonathan Sichterman. Oh, I would have had it. I would have had it.  Jonathan Sichterman for the Appellees. Your Honor, the district court acted well within its discretion when it excluded not only the supplemental report, but also the two supplemental affidavits that the plaintiff supplied in response to our Daubert motion and our summary judgment motion. First of all, counsel today has spoken about an outcome determinative test. That test was never advocated at the district court level. He just argued that it should have been allowed under the typical Rule 37 framework. But here, the report was not timely disclosed. And the motion that was filed for leave to disclose this untimely report did not provide any explanation for why it was late. It was silent on all that. And it was only when we reached the oral argument on the summary judgment of the that the report just slipped through the cracks. Well, that's not good cause. The district court correctly found there was no good cause. Also, it's not good cause, but it's not bad faith, exactly. And so if the district court recognizes that factor two about the importance of the report weighs in favor of allowing it, why isn't that more important? It's only a month after discovery is closed. Why wouldn't that be the more important consideration under these circumstances? Well, because it's after we have a Daubert motion pending. We've already challenged the expert on various grounds. And so now we would have to potentially have a supplemental report of our own to address these new bases that the expert is offering up. We would also have to have a new Daubert motion, a new summary judgment motion. So we'd essentially be starting the expert discovery process almost from the very beginning. And there was no good cause for that. There was no substantial justification for that. Now, the two affidavits, which counsel did not mention in his opening brief, but the two affidavits that were supplied in response to our pending motions were specifically tailored to defeat our motions. And so that was harmful for us because, again, this is a third and a fourth bite at the apple specifically tailored to defeat our pending motions. And when the court considers what was in the original report and what was in the record for some two years before we moved for summary judgment, it's clear that under the Supreme Court standard and the Second Circuit standard that that report does not meet Daubert and Rule 702 requirements. The Supreme Court in Comotire v. Carmichael requires an expert, especially an engineering expert in a product's liability case, to provide a methodology, a methodology that's recognized in the industry. And specifically that case involved tires. There was no evidence that that expert used a methodology that was recognized in the tire industry. And the same is true in this case. There's no evidence that this expert followed any methodology, much less one that's recognized in the latter industry. But you would apply that analysis even to the supplemental report, right? Because he says, well, I'm doing the scientific method, and you don't think that's a methodology. Right, Your Honor. He vaguely references the scientific method in his supplemental report. But the problem there is that one of the tenets of the scientific method is to test your hypothesis, which he didn't do. He had what I would call a perfect exemplar ladder. It's a ladder that's of the same design, and it also has the same alleged manufacturing defects that he claims were present in the ladder that Mr. Cleveland was on. So he could have run ANSI tests, which are the recognized tests in the ladder industry, one of which requires the ladder to support 1,200 pounds in the area where Mr. Cleveland's ladder broke. He didn't do that, even though he could have. He also could have tested his own theories. He had various theories about torsion and side loading and so forth. But he didn't test any of those theories on his exemplar, and he didn't do that even in the supplemental report. So, of course, the Court should not consider that supplemental report. But even if it does, it doesn't change the outcome, because there's still no testing. And the other basis — I mean, does he need to have testing to suggest an alternative design? So I guess I take it from the report, you could infer two possible alternative designs. One would be a regular step ladder where the steps are attached to one side of the ladder. Another one would be a ladder with a reinforced pin joint. So I guess the first thing just exists in the marketplace, and so maybe you could just, you know, infer from that that it's a safer alternative design. If you were persuaded by his argument about why this design put too much pressure on the pin joint, maybe you could infer that it needed to be reinforced. So why isn't that enough to suggest an alternative design? Well, a couple of points on that, Your Honor. First, he never actually said in either — in any of his reports or his affidavits, nor did counsel say in the briefing on the summary judgment that the traditional step ladder is an alternative design. That first was raised here on appeal. Now, with respect to this reinforcement — I mean, come on. I mean, it does say, like, unlike a traditional step ladder, this design puts extra pressure on the — I mean, doesn't that just mean that that's a reasonably available alternative design? No, Your Honor, because on the last page of his report, he talks about, as an alternative, they could have reinforced the pin joint. He doesn't say, as an alternative, they could have just made this a traditional step ladder. But regardless of either of these two types of design changes that he alluded to in his report, he doesn't have the test data that he needs to — excuse me — to say that this is a reasonable alternative design. He doesn't calculate the amount of torsion or the amount of side load that was applied to the ladder when Mr. Cleveland was standing on it. And he does not calculate the amount of torsion or the amount of side load that the ladder — I need that information.  Because it might be that there's some benefit to the way this design was. And so he does have to show that this design is unsafe and there's a reasonably available alternative design that could accomplish the same purposes. Right. He would need — But even if you could have a traditional step ladder, maybe it wouldn't have the features of this ladder that they want to provide. And so you have to show that it's unreasonable to market this ladder. Is that right? Well, that's — yes, that's part of it, certainly, Your Honor. That there are benefits to this design, the way it folds up, its utility and so forth. And also, as far as making a design that is safer, that is not as allegedly unsafe, this ladder, as designed, supports 1,200 pounds. So that's far greater than what Mr. Cleveland could have applied. So Mr. Slocum needed — Well, that's sort of a merits determination, right? Your Honor, we know the 1,200 pounds, that's your claim, your expert's testimony. But that's not the — I mean, this expert testimony was that it couldn't handle the 250 pounds. But that takes him back to the factual basis, Your Honor. He didn't provide any tests to indicate that it could not support the 200 pounds or the 250. Because he takes for granted the claim that — about the cause of the accident and then just infers that this is what must have happened. Right. He assumes that the ladder collapsed, and he starts from that assumption. But there were no tests to back that up, nor were there — nor was there any test data to support that. That's why it's not expert testimony. Correct, Your Honor. This is not an expert testimony because he is not providing the facts and data that he needs to support his opinions. And so for all these reasons, the district court properly excluded Mr. Slocum's report. And then to finally briefly touch on the alternative design, Mr. Slocum needed to provide a design that was technologically and economically feasible, and he did not do that. He vaguely alluded to reinforcement in the pin joint, but he didn't say what type of reinforcement that would be, how it would be, you know, what size it would be, what materials and so forth. So without that information, neither he nor the court nor the jury could consider whether that was truly a reasonable alternative design that would have made the model ladder safer without — How does that go to the admissibility of the report as opposed to some kind of question for cross-examination and so on? I mean, why couldn't you say, well, you say that it should be — the pin joint should be reinforced, but wouldn't it be prohibitively costly to reinforce it enough to accomplish what you suggest? Why does that mean that the report itself should be excluded? Well, because under the rules — the amended Rule 702, which specifically by its terms requires the expert to prove by a preponderance of the evidence that he has the scientific methodology, the sufficient factual basis and so forth, without these data points, he cannot prove by a preponderance of the evidence that this ladder is a reasonably safe alternative design. And for all these reasons and the reasons that we explained in our briefing, we respectfully request that you affirm. Thank you. Thank you very much. Will there be a rebuttal? Yes, Your Honor. Dr. Slocum was entitled to take the facts of the accident as testified to by Mr. Cleveland as true and to undertake his analysis, which he did on an engineering basis, of whether that means that this ladder must have been defective. And that's the process he followed. Defense doesn't like that approach. They want to attack the truthfulness of Mr. Cleveland through their expert. That's a credibility issue. That's something that you can't decide early on in the case. That goes to the juror. But isn't that the function of the expert testimony? I mean, we're not, you know, we're not on a motion to dismiss. We're talking about evidence that supports his version of the events. And if his expert report basically says, assuming that what the plaintiff says is true, the ladder would have been defective, how does that help the district court determine whether his version of events is true or whether there are facts supporting it? It doesn't. But that's a credibility issue for a jury. That's not for a summary judgment. How is that either scientific or method? Assuming that everything that one side says is true, then I'm having trouble understanding. Where the scientific part that you and I couldn't do ourselves comes into Dr. Slocum's analysis. If I could try to explain that. Sure. Dr. Slocum was entitled, any expert is entitled to make assumptions in his analysis. And what happens is that at trial either those assumptions are established and the opinions have some weight to them or those assumptions aren't established and the opinions won't be credited. What Dr. Slocum did, assuming the truth of what Mr. Cleveland said, was then apply physics and engineering to this accident. He looked at the nature of the failure and applied his particular expertise to define how that failure occurred. And he used a test. Was it the fire test or the other test that your friend says really is not applicable to these ladders? To determine whether these ladders are safe. What he did was reference the scientific method as it is articulated in a particular code that happens to be a national fire protection code. He was referencing the scientific method. That's the testing and the method he was following. The scientific method involves testing a hypothesis. So what hypothesis was he testing? He was trying to determine whether this ladder must have been defective or not. If, in fact, it failed as Mr. Cleveland described it as having failed. Right. So he does the hypothesis is if Cleveland is right about everything that happened, would the ladder be defective? Yes. And he concludes based on application of his particular engineering expertise that it had to have been defective. To answer this question, so, I mean, if we have in the area of ladder safety these established ANSI standards, right? Now, I'm not saying that that's necessarily dispositive because maybe they don't account for certain circumstances and whatever. But wouldn't you expect an expert report about ladder safety to either apply the standards or explain why the standards don't account for a particular issue in the case? I mean, isn't that just an established methodology you would expect to be at least considered to some extent? In some of his later submissions, Dr. Slocum does address that. But, of course, the Court wouldn't look at some of his later submissions. His point was that what you're doing essentially in testing one out of a lot is not testing it under the conditions that existed at the time Mr. Cleveland was using the ladder. And so what Dr. Slocum did was get an exemplar ladder and analyze what's going on with this ladder. He found that in the area of the pin, which is the weak point where there was a failure here, there are manufacturing variations that can weaken the ladder in that point. And then he found similar sorts of things in the ladder that failed. He never saw the ladder that failed. No one saw the ladder that failed before. No expert saw the ladder that failed before the failure. So the competing expert report says the accident couldn't have happened the way Cleveland says. I've tested the ladder under the ANSI standards. I've put the weight. I saw what happened and so on. Right. Your expert says, assuming that what happened is what Cleveland says, here's how it would have happened. So how is the district court supposed to say that that created a question of material fact if you're taking for granted that it happened? You didn't say it must have happened the way Cleveland said. You're saying, like, assuming it happened the way Cleveland said, here's how it would have played out. I mean, if the other side has put at issue whether that's what happened and done sort of objective tests to the ladder, then what is it that this expert report is contributing that would preclude summary judgment? Your Honor, I think it's a mistake to take the defendant's expert and say, we must believe that. You don't have to believe that. No, I'm not saying that you have to believe that. I'm just saying they put in evidence that the expert says, I've examined this ladder design and here is some evidence that it could not have happened the way the plaintiff alleges. All of which sets up a credibility determination, both in Mr. Cleveland and this other expert, as to who's correct. I'm saying it's not a credibility determination between the – oh, sorry. You're saying it's a credibility determination between Cleveland and the expert. Yes. But the testimony itself, the expert testimony, nothing really turns on that expert's credibility because it's about whether Cleveland is right about what happened or not. Yeah. It wasn't excluded on the basis of whether to believe our expert or not. It was excluded on the basis that the supplementation was right. But are you then saying that everything just sort of depends on whether Cleveland is credible about what happened, not anything that's being contributed by Cleveland's expert report? Well, I don't think that's the case, Your Honor, because the expert report explains how this accident happened, if Mr. Cleveland is accurate. This accident could have – in fact, could have happened if what he's saying is true. Contrary to what their expert is saying, he's saying it couldn't have happened if what Mr. Cleveland said. But aren't those two propositions consistent? Like the other expert says, I don't think it happened – like it didn't happen the way Cleveland says. Right. But if you required that other expert to posit that it did, except the scenario in which it did happen exactly as he said, he might say, well, yeah, okay, then it would be defective, but I just don't believe that that's what happened. But, Your Honor, what their expert is saying, it couldn't have happened the way Mr. Cleveland said it happened. Whether it happened the way he said it happened is an issue of credibility. And our expert then says, in fact, could have happened and did happen and explains how it happened if what Mr. Cleveland said is correct. We – so there may be – I have just one question. I just want to be clear. I could have maybe asked this at the outset instead of at the end, which is we're looking only at this point on appeal at the design defect claims. Is that right? That's the argument that I made. Okay, great. Thank you. That's very helpful. Thank you very much. Thank you, Your Honor. We'll reserve the decision.